UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re:

        TELIGENT, INC.,                               Chapter 11
                                                           Case No. 01-12974 (SMB)

                Reorganized Debtor.
----------------------------------------------------------X
SAVAGE & ASSOCIATES, P.C., as
Unsecured Claims Estate
Representative of TELIGENT, INC.,

                         Plaintiff,                   Adv. Proc. No. 03-2523

       -- against --

ALEX MANDL,

                         Defendant.
----------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER
DENYING THE PLAINTIFF'S MOTION TO SERVE
AND FILE A THIRD AMENDED COMPLAINT**

**A P P E A R A N C E S:**

SAVAGE & ASSOCIATES, P.C.
Attorneys for Plaintiff
P.O. Box 804
Croton on Hudson, New York 10520

      Denise L. Savage, Esq.
          Of Counsel


KIRKPATRICK & LOCKHART LLP
Attorneys for Defendant
599 Lexington Avenue
New York, New York 10022

      Robert N. Michaelson, Esq.
      Judith Sturtz Karp, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

The plaintiff brought this adversary proceeding to recover in excess of $15 million from Alex Mandl, Teligent's former Chairman and Chief Executive Officer.  She now seeks to serve and file a Third Amended Complaint for the purpose of asserting an intentional fraudulent transfer claim.  The defendant opposes the motion, and the motion is denied for the reasons that follow.

## BACKGROUND

The background to this dispute is discussed in the Court's previous decisions reported at 325 B.R. 81 (the "Decision") and 325 B.R. 134 (the "Reconsideration Decision"), familiarity with which is assumed.  Briefly, the defendant was hired as Teligent's Chairman and CEO in September 1996.  At the time, he received a $15 million loan from Teligent's original shareholders.  The loan was evidenced by two notes that were subsequently assigned to Teligent.  The defendant's employment agreement provided, inter alia, that the loan would be forgiven if Teligent terminated him "other than for Cause" during the next five years.

In April 2001, IDT Corporation bought a significant equity stake in Teligent, and decided to bring in its own management team.  On or about April 27, 2001, Teligent and the defendant entered into a written agreement (the "Separation Agreement"), which, by its terms, terminated the defendant's employment "other than for Cause."  The separation agreement also contained a release in the defendant's favor.  The release and the termination without cause independently led to the same result; the defendant was relieved of the obligation to repay the outstanding balance

due on the 1996 loan.  By that time, $3 million had already been forgiven and the defendant owed $12 million.  The remaining balance was to be forgiven in 20 equal annual installments of $600,000 to minimize the defendant's income tax liability.  Teligent filed its chapter 11 petition less than one month after the defendant's termination.

The plaintiff was appointed under Teligent's confirmed plan to prosecute Teligent's chapter 5 causes of action for the benefit of the unsecured creditors.  She commenced this adversary proceeding on April 25, 2003, filed an amended complaint on May 16, 2003, and thereafter obtained leave of the Court to file and serve a second amended complaint, which she did on or about March 14, 2004.  The Second Amended Complaint included six claims for relief that are detailed in the Decision, 325 B.R. at 85.  With the exception of an unrelated preference claim, the Second Amended Complaint sought to recover the Loan Transfers, defined to include both the 1996 loan and the forgiveness of the unpaid balance, on two general grounds:  (1) the Loan Transfers amounted to a pre-petition constructive fraudulent transfer, and (2) each installment forgiving $600,000 of the unpaid balance was an unauthorized post-petition transfer.

Both parties moved for partial summary judgment.  The Court rendered the Decision on April 7, 2005, ruling that the forgiveness of the loan obligation constituted a "transfer" under the Bankruptcy Code, but openly questioned whether the transfer deprived Teligent's creditors of anything of value.  Other provisions in the employment agreement relieved the defendant of the obligation to repay the loan under certain conditions.  In essence, the repayment obligation might already have been terminated, or the defendant might have had an absolute right to terminate it, when the parties signed the Separation Agreement.  The plaintiff thereafter moved for

3

reconsideration. The Court rendered the Reconsideration Decision on May 25, 2005, granting reconsideration but adhering to its original determination.

The plaintiff now seeks leave to file and serve a Third Amended Complaint. According to her motion, at page six, the purpose of the amendment is to "include a cause of action for post-petition Loan Transfers arising as a result of the Loan Forgiveness provisions of the Pre-Petition Agreement between the Defendant and Teligent." But the Second Amended Complaint already included this claim, and the proposed pleading is actually intended for a different purpose. It seeks to assert a new claim based on the intentional fraudulent transfer provisions of the Bankruptcy Code and Virginia law. The defendant opposes the plaintiff's application.

## DISCUSSION

Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to amend pleadings. Generally, leave should be freely granted, but the court may deny the motion in instances of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party or futility. Foman v. Davis, 371 U.S. 178, 182 (1962). While delay alone is insufficient, a court may deny leave to amend where "after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (1990). Legal prejudice involves consideration, inter alia, of whether the new claim would require the opposing party to expend significant additional resources to conduct discovery or prepare for trial and whether the amendment would significantly delay the resolution of the case. Block v. First Blood Associates, 988 F.2d 344, 350 (2d Cir. 1993). The

longer the period of unexplained delay, the less will be required of the non-moving party to show prejudice. Id.

Here, several factors weigh in favor of denying the motion. The adversary proceeding was filed over three years ago, and the plaintiff last amended the complaint over two years ago. The parties subsequently filed cross-motions for partial summary judgment that were decided one year ago. In February 2006, the Court granted the plaintiff's request to conduct limited additional discovery, including a second deposition of the defendant. That discovery closes on June 4th, or in less than one week, subject to the possibility of some additional expert discovery.[1] The final pre-trial order is due on June 30th, and the final pre-trial conference, at which the court intends to fix a trial date, is scheduled to take place on July 20th.

Initially, the plaintiff has not offered a satisfactory explanation as to why she did not assert an intentional fraudulent transfer claim until now. In fact, the motion mischaracterizes the purpose of the amendment, and doesn't even mention the intentional fraudulent transfer claim. Her reply blames the delay on various pending motions, including a motion that she filed for leave to appeal. The contemplated appeal would not, however, have deprived the Court of jurisdiction, or affected the filing of an amended complaint.[2]

---

[1] Neither the reopening of discovery nor anything in this decision is intended to imply that the Court has authorized the submission of additional expert reports.

[2] A notice of appeal divests the lower court of jurisdiction over those aspects of the case that are involved in the appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); 20 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 303.32[1], at 303-71 (3d ed. 2005)("MOORE'S"). If the appeal is from an interlocutory order, the lower court can continue to exercise jurisdiction over matters not involved in the appeal. New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1350 (2d Cir. 1989), cert denied, 495 U.S. 947 (1990); Red Ball Interior Demolition Corp. v. Palmadessa, 947 F. Supp. 116, 120 (S.D.N.Y. 1996), aff'd, 107 F.3d 4 (2d Cir. 1997); Keene Corp. v. Coleman (In re Keene Corp.), 166 B.R. 31, 33 (Bankr. S.D.N.Y. 1994); 20 MOORE'S § 303.32[2][b][v], at

In any event, the plaintiff has known the facts on which she now relies for over two years. The impetus to the assertion of the new claim appears to be the discovery that the defendant actually resigned from Teligent, and was not terminated by Teligent "other than for Cause." Yet in response to the defendant's argument that the new claim does not relate back to the Second Amended Complaint, and is, therefore, timely, the plaintiff contends that the defendant had notice of the new claim "long ago," (Plaintiff's Reply to Defendant's Objection [etc.], dated May 23, 2006, at ¶ 14)("Plaintiff's Reply")(ECF Doc. # 93), and the underlying "legal and factual allegations were set forth in the Initial Complaint and Second Amended Complaint." (Id.)

Obviously, if the defendant knew about the claims, the plaintiff also knew about them and could have included them in the Second Amended Complaint. Moreover, the news articles on which she now relies were published in 2001,[3] and she took the defendant's deposition on March 5, 2004, before she prepared the Second Amended Complaint.[4] At that deposition, she questioned the defendant extensively about the circumstances surrounding his termination, and he said, at one point, that he had resigned. Decision, 325 B.R. at 84; accord Plaintiff's Reply, at ¶ 20. In short,

---

303-8; see Thomas v. Board of Education, 607 F.2d 1043, 1047 n.7 (2d Cir. 1979), cert. denied, 444 U.S. 1081 (1980) (appeal from an interlocutory order granting or denying a preliminary injunction does not deprive lower court of jurisdiction to adjudicate the merits). Here, the plaintiff appealed from an award of partial summary judgment in her favor regarding the determination that the forgiveness of the loan was a "transfer." The interlocutory order resolved one issue, and did not dispose of the adversary proceeding. The appeal certainly did not stop plaintiff from amending the complaint to assert an intentional fraudulent transfer claim.

[3]    The plaintiff claims that she did not discover the articles until February 2006. In any event, the articles are supposedly important because they refer to the defendant's statements that he resigned from Teligent. The plaintiff concedes, however, that she learned of the defendant's possible resignation when she took his deposition. (Plaintiff's Reply, at ¶ 20.)

[4]    The Second Amended Complaint was dated March 14, 2004. The plaintiff insists that she did not take the deposition of the defendant until April 2004, after she served her Second Amended Complaint. (See Plaintiff's Reply, at ¶ 20.) The Decision indicated, however, that the deposition was actually held on March 5, 2004, see 325 B.R. at 83, and the date is confirmed by an examination of the transcript which was attached as Exhibit E to plaintiff's opposition to the defendant's motion for partial summary judgment and in support of her own motion. (See ECF Doc. # 46.) Thus, the deposition took place before the Second Amended Complaint was drafted.

she had all the facts necessary or available to allege the intentional fraudulent transfer claim before the Second Amended Complaint was filed.

Furthermore, the new claim would severely prejudice the defendant because it involves a new theory and requires discovery and proof of different facts. See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998). The new claim puts Teligent's intent in issue for the first time, and calls for proof of its corporate state of mind in 1996 when the loan was made, and in 2001 when it was forgiven. The plaintiff's assertion that the new claims "do not raise any substantial issues not closely connected to the original transactions, occurrence[s] and facts," (Plaintiff's Reply, at ¶ 24), overlooks the stark differences between the elements of a constructive fraudulent transfer claim and a claim sounding in intentional fraud. The parties would have to locate Teligent's former officers and directors, and probe their recollections of events that took place as far back as ten years ago.

In addition, the amendment will delay the resolution of this case far beyond the current schedule, even if the schedule is ultimately modified to permit some additional expert discovery, because it will plunge the parties and the Court into protracted motion practice. It is well settled that the Rule 9(b) pleading requirements apply to claims of intentional fraudulent transfer. See Atlanta Shipping Corp. v. Chemical Bank, 818 F.2d 240, 251 (2d Cir. 1987). FED. R. CIV. P. 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Rule 9(b) is designed to provide a defendant with fair notice of the plaintiff's claim, safeguard the defendant's reputation from improvident charges of wrongdoing and protect against strike suits. Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 663 (2d Cir. 1997); O'Brien v. Nat'l Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991); DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987); Segal v. Gordon, 467 F.2d 602, 607 (2d Cir. 1972). Although scienter may be pleaded generally, the pleader must nevertheless "allege facts that give rise to a strong inference of fraudulent intent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); accord Campaniello Imports, 117 F.3d at 663; Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996). A strong inference of fraudulent intent may be established in one of two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Shields, 25 F.3d at 1128; accord Chill v. General Elec. Co., 101 F.3d at 267.

The allegations regarding Teligent's intent are conclusory and sparse. According to ¶ 13 of the proposed amended complaint, the separation agreement was drafted "in an effort to falsely obtain forgiveness and release of the Loan Transfers under the terms of a previously executed employment agreement." The next paragraph alleges that the separation agreement was "a vehicle for an actual and constructive fraudulent conveyance reflecting and assisting the Defendant's attempts to enrich him and render him whole at the expense, defrauding, hindrance and delay of the Debtors [sic] general unsecured creditors." Finally, ¶ 39 asserts that the Loan Transfers were made by and to the Defendant "with the intent to hinder, delay and or defraud the general unsecured creditors."

These allegations do not give rise to a strong inference of Teligent's fraudulent intent. The proposed amendment does not plead facts implying that Teligent, as opposed to the defendant, had the motive and opportunity to commit fraud, or that Teligent, as opposed to the defendant, consciously misbehaved or acted recklessly. It only alleges that the defendant was Teligent's president, CEO and chairman as late as May 8, 2001. It suggests that he intended to defraud Teligent's creditors; but does not allege facts implying that the defendant controlled Teligent's decision making when it entered into the Separation Agreement.

The plaintiff's offer to add the facts set forth in the reply to rectify the pleading deficiency, (Plaintiff's Reply, at ¶ 30), does not solve the problem. The reply does not contain facts that give rise to a strong inference of Teligent's fraudulent intent. To the contrary, they confirm that IDT Corporation seized control of Teligent in April 2001, and wanted the defendant out. The plaintiff has not alleged any facts suggesting that IDT had the motive to give up a $12 million loan owed to a company in which it had just invested a substantial amount of money.

Accordingly, the motion for leave to amend is denied. So ordered.

Dated: New York, New York
       June 1, 2006

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge