UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                         :
                                               :
    TELIGENT, INC.,                          :            Chapter 11
                                               :            Case No. 01-12974(SMB)
        Reorganized Debtor.               :
------------------------------------------------------X
SAVAGE & ASSOCIATES, P.C., as                  :
Unsecured Claims Estate Representative         :
of TELIGENT, INC.,                             :
                                               :
        Plaintiff,                         :            Adv. Proc. No. 03-2523
                                               :
    -- against --                              :
                                               :
ALEX MANDL,                                    :
                                               :
        Defendant.                         :
------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## DENYING PLAINTIFF'S RECUSAL REQUEST

**A P P E A R A N C E S:**

SAVAGE & ASSOCIATES, P.C.
Attorneys for Plaintiff
P. O. Box 804
Croton on Hudson, New York 10520-0804

    Denise L. Savage, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

## MEMORANDUM DECISION AND ORDER
## DENYING PLAINTIFF'S RECUSAL MOTION

        The plaintiff in this adversary has, by letter dated October 10, 2006 (the "Recusal

Letter"(ECF Doc. # 108)), requested that I recuse myself. She plans to call one of my wife's law

partners to testify in her rebuttal case, and contends that this creates an appearance of impropriety and the risk of bias. I disagree, and deny the request.

## BACKGROUND

The background to this dispute is discussed in the Court's previous decision reported at Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.), 325 B.R. 81 (Bankr. S.D.N.Y. 2005), familiarity with which is assumed. In brief, Teligent hired Mandl as its president and CEO on September 1, 1996. Teligent's shareholders made a $15 million loan, and assigned the loan to Teligent. Mandl's 1996 employment agreement stated, among other things, that the loan would be forgiven if Teligent terminated him "other than for Cause" during the next five years.

Teligent terminated Mandl on April 27, 2001. At that time, the parties entered into a Separation Agreement that provided for his termination "other than for Cause," and included mutual releases. The net effect was to forgive the balance of the loan that then stood at $12 million. The Teligent debtors filed their chapter 11 petitions less than one month later. The plaintiff was appointed under Teligent's confirmed plan to prosecute avoidance actions under chapter 5 of the Bankruptcy Code. She brought this litigation charging, in substance, that the 2001 loan forgiveness amounted to a constructive fraudulent transfer.

During his second deposition held on May 4, 2006, Mandl testified that Teligent had not considered filing for bankruptcy while he was still employed by Teligent, and he did not recall meeting with attorneys from Weil, Gotshal & Manges ("WGM") or any other attorneys to discuss a potential chapter 11 filing. The Recusal Letter stated, however, that Teligent retained WGM as bankruptcy counsel. In addition, the plaintiff submitted evidence indicating that a WGM bankruptcy partner, John Rapisardi, Esq., sent wire transfer instructions to Stuart

Kupinsky, Esq., Teligent's General Counsel, on April 18, 2001, and Teligent wired a $275,000 retainer to WGM on April 20, 2001. When Teligent filed its chapter 11 petition on May 21, 2001, it was represented by Kirkland & Ellis, not WGM.

In early October, the plaintiff moved for injunctive relief restraining Mandl from transferring his assets out of the United States during the pendency of this adversary proceeding. The hearing on the preliminary injunction motion was scheduled for Friday, October 13, 2006, and the motion apparently prompted the Recusal Letter. The latter stated that the plaintiff intended to call a partner from WGM as a witness to rebut Mandl's statements. The purpose of the testimony was to show "the Defendant's knowledge of the Debtors' financial condition and intention to file bankruptcy at the time that the Defendant used this inside information to obtain forgiveness of the loan at issue in the Adversary Proceeding." The injunction motion was settled, but since the plaintiff may attempt to call a WGM partner as a witness for the same reason at the trial on the merits, the issue is not moot. As noted, my wife is a partner in WGM, and the plaintiff maintains that this fact, without more, mandates my recusal.

## DISCUSSION

Judicial disqualification is governed by 28 U.S.C. § 455, which is made applicable to this adversary proceeding by FED. R. BANKR. P. 5004(a). Section 455 states, in pertinent part:

> (a)  Any justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b)  He shall also disqualify himself in the following circumstances:
>
>   (1)  Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . .

Recusal motions are committed to the trial court's discretion. Apple v. Jewish Hospital and Medical Center, 829 F.2d 326, 333 (2d Cir. 1987). The court applies an objective test. The appearance of impropriety must be determined "by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all of the relevant facts would recuse the judge." In re Drexel Burnham Lambert Inc., 861 F.2d 1307, 1313 (2d Cir. 1988); accord United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992); Apple, 829 F.2d at 333. Where actual bias or prejudice is the basis of the motion, "[t]he alleged bias and prejudice sufficient to warrant disqualification must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." United States v. Grinnell Corp., 384 U.S. 563, 583 (1966); accord Lewis v. Tuscan Dairy Farms, Inc., 25 F.3d 1138, 1141 (2d Cir. 1994). In either situation, the motion must be made at the earliest possible moment after obtaining the information of possible bias to preserve judicial resources and prevent the movant from "hedging its bets against the eventual outcome." SEC v. Grossman, 887 F. Supp. 649, 658 (S.D.N.Y. 1995).

No reasonable person could question my impartiality simply because the plaintiff intends to call a WGM partner to testify.[1] First, WGM has no interest in the litigation.[2] At most, one of its attorneys may be an impeachment witness. Second, the matter on which he may bear witness is irrelevant. See United States v. Morrison, 153 F.3d 34, 48-

---

[1] The Recusal Letter referred to two possible WGM witnesses, Barry Gold, Esq. and Rapisardi. At an October 13, 2006 conference, the plaintiff stated that Gold was no longer affiliated with WGM.

[2] The plaintiff had brought an avoidance action against WGM to recover the retainer payment. See Savage & Assocs., P.C. v. Weil, Gotshal & Manges (In re Teligent, Inc.), Adv. Proc. No. 03-3663 (Bankr. S.D.N.Y.) That litigation was settled. I recused myself, and the adversary proceeding was reassigned to another judge.

4

49 (2d Cir. 1998)(district court judge did not abuse her discretion in refusing to disqualify herself after defendant stated his intention to call judge's spouse as witness where spouse had no interest in the outcome and his testimony would be irrelevant).  On this latter point, the plaintiff suggests that the testimony will show Mandl's knowledge of Teligent's shaky financial condition and intention to file bankruptcy, and his use of this "inside information to obtain forgiveness of the loan at issue in this Adversary Proceeding." (Recusal Letter, at p. 1.)

This litigation, however, concerns a constructive fraudulent transfer, not a breach of fiduciary duty – a claim that the plaintiff lacks standing to assert.[3]  To prevail on her constructive fraudulent transfer claim, the plaintiff must prove that (1) Teligent transferred its property (2) at a time when it was insolvent, and (d) did not receive reasonably equivalent value in exchange for the transfer.  Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.), 325 B.R. 81, 86 (Bankr. S.D.N.Y. 2005).  The Court has already determined that the 2001 loan forgiveness constituted a "transfer." Id. at 87.  At trial, the plaintiff must prove that Teligent was insolvent and did not receive reasonably equivalent value for the loan forgiveness.  Mandl's knowledge and motives are immaterial on these issues [4]; Teligent either was or was not insolvent and either did or did not receive reasonably equivalent value.  If the WGM testimony were relevant to these issues, the plaintiff would undoubtedly offer it in her direct case and not even bother to

---

[3]    Any breach of fiduciary duty claim revested in the Reorganized Teligent at the time of confirmation.

[4]    The Court recently denied the plaintiff's motion for leave to file a third amended complaint to add a claim that the loan forgiveness was an intentional fraudulent transfer.  Savage & Associates, P.C. v. Mandl (In re Teligent, Inc.), 346 B.R. 73 (Bankr. S.D.N.Y. 2006)

cross-examine Mandl on the point.  Instead, the rebuttal testimony is simply designed to show that Mandl is not credible.  Finally, the plaintiff has no shown actual bias.

So ordered.

Dated: New York, New York
       November 13, 2006

*/s/ Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge