UNITED STATES BANKRUPTCY COURT        **FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                          :
                              :
TELIGENT, INC.,             :      Chapter 11
                              :      Case No. 01-12974 (SMB)
              Reorganized Debtor.   :
-------------------------------------------------------------X
SAVAGE & ASSOCIATES, P.C., as the      :
Unsecured Claims Estate Representative for  :
and on behalf of TELIGENT, INC., et al.,   :      Adv. Proc. No. 03-2523
                              :
                 Plaintiff,      :
                              :
       -- against --          :
                              :
ALEX MANDL,             :
                              :
                 Defendant.    :
-------------------------------------------------------------X

## MEMORANDUM DECISION DENYING MOTION TO
## MODIFY CONFIDENTIALITY RESTRICTIONS IN
## MEDIATION ORDERS AND CROSS-MOTION
## FOR INJUNCTIVE RELIEF AND SANCTIONS

**A P P E A R A N C E S :**

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Attorneys for Plaintiff Savage & Associates, P.C.
101 Park Avenue
New York, New York 10178

     Jacques Semmelman, Esq.
        Of Counsel

SAVAGE & ASSOCIATES, P.C.
Attorneys for Plaintiff Savage & Associates, P.C.
P.O. Box 804
Croton on Hudson, New York 10520

     Denise L. Savage, Esq.
        Of Counsel

HALL, LAMB & HALL, P.A.
Attorneys for Defendant Alex J. Mandl
Grand Bay Plaza
Penthouse One
2665 South Bayshore Drive
Miami, Florida 33133

     Andrew C. Hall, Esq.
     Adam J. Lamb, Esq.
         Of Counsel

WILLIAMS & CONNOLLY LLP
Attorneys for K&L Gates LLP
725 12th Street, N.W.
Washington, D.C. 20005

     Thomas G. Ward, Esq.
     Michael S. Sundermeyer, Esq.
     Mark S. Levinstein, Esq.
     Luba Shur, Esq.
         Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

Non-party K&L Gates LLP ("K&L") formerly represented the defendant Alex

Mandl.  The parties engaged in unsuccessful pre-trial mediation, and following trial, the

Court entered a judgment in excess of $12 million against Mandl and in favor of the

plaintiff, Savage & Associates, P.C. ("Savage"), the Unsecured Claims Representative

for and on behalf of Teligent, Inc. ("Teligent").  After the entry of judgment, Mandl

discharged K&L, participated in a second round of mediation with new counsel, and

eventually settled with Savage.  As part of the settlement, Mandl assigned to Savage a

portion of the proceeds derived from his legal malpractice claim against K&L.  As

contemplated by the settlement, Mandl sued K&L for legal malpractice in the District of

Columbia (the "DC Action").

K&L contends that it needs the documents and communications generated during

the two mediations to defend itself in the DC Action.  (Memorandum of Points and

Authorities in Support of [K&L's] Motion to Lift Mediation Confidentiality Restrictions,

dated March 5, 2009 (the "Motion"))(ECF Doc. # 227.)[1]  Toward that end, it has moved

for relief from the confidentiality provisions contained in this Court's General Order M-

143, dated Jan. 17, 1995 ("General Mediation Order") and the specific mediation order

entered in this case.

Mandl does not oppose the relief, but Savage does.  In addition, Savage has cross-

moved for injunctive relief to restrain K&L from challenging the legality of the

assignment in the DC Action and for sanctions pertaining to the disclosure of certain

confidential information (the "Cross-Motion").  (Unsecured Claims Estate

Representative's (I) Objection to [K&L's] Motion to Lift Mediation Confidentiality

Restrictions and II) Application in Support of Representative's Cross Motion to (A)

Enforce Court's Mediation Order and General Order 143 (B) Direct Turnover of

Applicable Documents (C) Impose Monetary Sanctions against Hall Lamb and Hall,

P.A., Williams & Connelly, LLP and [K&L] and (D) Enjoin [K&L] From Seeking to

Collaterally Attack the Order Approving the [Settlement] and to Void Terms of the

[Settlement], dated Apr. 24, 2009 ("Savage Objection and Cross-Motion"))(ECF Doc. #

234.)

The Motion and the Cross-Motion are denied for the reasons that follow.

---

[1]        Unless otherwise noted, all ECF Doc. #s refer to Adv. Proc. No. 03-2523.

# BACKGROUND

## A.    The Adversary Proceeding

The background to this contested matter is set out in the Court's post-trial decision, Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 380 B.R. 324 (Bankr. S.D.N.Y. 2008), familiarity with which is assumed.  In 2003, Savage sued Mandl, Teligent's former Chairman and Chief Executive Officer, to avoid and recover preferential and fraudulent transfers.  The principal claim arose out of Teligent's forgiveness of a $12 million debt that Mandl owed at the time that Teligent terminated his employment.  K&L had represented Mandl at the time of his termination, and continued to represent him in this adversary proceeding.

On February 3, 2004, the Court issued a mediation order that applied to this adversary proceeding as well as roughly 1,000 other adversary proceedings commenced by Savage.  Among other things, the mediation protocol attached to and adopted by the mediation order included certain provisions relating to the confidentiality of the mediation process:

> Any statements made by the Mediator, by the Parties or by others during the mediation process shall not be divulged by any of the participants in the mediation (or their agents) or by the mediator to the court or to any third party unless otherwise ordered by the Court.  All records, reports, or other documents received or made by a mediator while serving in such capacity shall be confidential and shall not be provided to the court, unless they would be otherwise admissible.  See the ADR General Order, section 5.1, January 17, 1995.  In addition, and in accordance with section 5.2 of the ADR General Order dated January 17, 1995, Rule 408 of the Federal Rules of Evidence shall apply to the mediation proceedings.

(Order Approving Mediation Procedures and Appointing a Mediator, dated Feb. 3, 2004, Sched. A, § 4)(ECF Doc. # 1806, filed in Bankr. Case # 01-12974.)  Unless otherwise

4

noted, the mediation order and the mediation protocol are referred to collectively as the

Teligent Mediation Order.

The Teligent Mediation Order was based on and tracked the Court's General

Mediation Order.[2]  Section 5.1 states, in pertinent part:

> Any statements made by the mediator, by the parties or by others
> during the mediation process shall not be divulged by any of the
> participants in the mediation (or their agents) or by the mediator to the
> court or to any third party. All records, reports, or other documents
> received or made by a mediator while serving in such capacity shall be
> confidential and shall not be provided to the court, unless they would be
> otherwise admissible.  The mediator shall not be compelled to divulge
> such records or to testify in regard to the mediation in connection with any
> arbitral, judicial or other proceeding, including any hearing held by the
> court in connection with the referred matter.

(General Mediation Order, at § 5.1.)

In October 2004, Mandl (then represented by K&L) and Savage engaged in

mediation but no settlement resulted (the "2004 Mediation").  The Court subsequently

conducted a bench trial, and rendered its decision on January 3, 2008.  See Teligent, 380

B.R. 324.  The Court concluded that Mandl was liable, and awarded damages in the

principal sum of $12,040,105.40, plus interest on $40,105.40 at the federal judgment rate

from the petition date to the date of the entry of judgment, in addition to the costs and

disbursements of the adversary proceeding.  Id. at 338, 344.  The Clerk of the Court

entered a judgment on January 24, 2008 (the "Judgment").  (ECF Doc. # 173.)

---

[2]      ADR General Order cited in the Teligent Mediation Order referred to the General Mediation
Order.

### B.    The Settlement Agreement

Following the entry of the Judgment, Mandl discharged K&L, retained new counsel, Greenberg Traurig, LLP ("GT"), and moved for relief from the Judgment, a new trial, or other relief.  (Memorandum of Law in Support of Relief from Judgment, for New Trial, or for Other Relief, dated Feb. 4, 2008)(ECF Doc. # 201.)  Savage opposed Mandl's motion, (Plaintiff's Objection to Defendant's Motion for a New Trial and for Other Relief, dated Feb. 12, 2008)(ECF Doc. # 205), and cross-moved for additional pre-judgment interest which, if granted, would have increased the Judgment to roughly $24 million.  (Plaintiff's Application in Support of Motion for Reconsideration of Court's Decision Regarding Award of Interest on the Recovered Loan and to Amend the Judgment Entered, dated Jan. 24, 2008)(ECF Doc. # 176.)  Savage also commenced a fraudulent conveyance action in the United States District Court for the Eastern District of Virginia against Mandl, his wife Susan Mandl, and Mandl's affiliate, ASM Investments, LLC.

In an attempt to reach a settlement of the outstanding matters, GT (on behalf of Mandl) and Savage engaged in a second round of mediation.  GT invited K&L to participate because Mandl claimed that K&L was liable to him for legal malpractice relating to its representation at the time he was terminated by Teligent and its representation of him in the adversary proceeding.  K&L declined the offer, and the mediation went forward on March 25 and 26, 2008 (the "2008 Mediation" and, together with the 2004 Mediation, the "Mediations").

6

The 2008 Mediation did not produce a settlement, but the parties continued to negotiate and eventually consummated a settlement agreement (the "Settlement") two months later.  The material terms included the following:

1) Mandl agreed to pay Savage $6.005 million;

2) Mandl agreed to pursue a legal malpractice claim against K&L "in good faith," and share 50% of the net recovery (after payment of Mandl's attorneys' fees and legal expenses) with Savage (the "Proceeds Assignment");

3) "[T]he value of the Judgment and the Reconsideration Motion being settled" is about $16 million (the "Agreed Valuation"); and

4) Savage agreed to dismiss the Virginia fraudulent conveyance action.

(See Unsecured Claims Estate Representative's Application Under Federal Rule of Bankruptcy Procedure 9019 in Support of Entry of Order Approving Settlement Agreement and Settling All Claims and Defenses in Adversary Proceeding, dated May 30, 2008, at Ex. 1)(ECF Doc. # 221.)

Savage thereafter moved for approval of the Settlement.  (Notice Of Presentment of an Order Approving the Unsecured Claims Estate Representative's Application Under Federal Rule of Bankruptcy Procedure 9019 Approving Settlement Agreement and Settling All Claims and Defenses in Adversary Proceeding, dated May 30, 2008)("9019 Motion")(ECF Doc. # 220.)  K&L received notice of the application, (see Savage Objection and Cross Motion, at Ex. B), but did not appear or object.  The Court approved the Settlement following the hearing.  (Order Approving Agreement, dated July 29, 2008 ("Settlement Order"))(ECF Doc. # 222.)

7

## C.    The DC Action

On May 30, 2008, Mandl commenced the DC Action, as contemplated by the pending Settlement.  As noted, it charged K&L with legal malpractice relating to its pre-litigation representation of Mandl and its representation during the adversary proceeding. During discovery, K&L sought all communications between GT and Savage and between GT and Mandl.  The request included documents generated in the course of the Mediations.  Mandl waived any possible mediation privilege, and agreed not to withhold any documents on that basis.  (Motion, at Ex. 15(Letter from Adam J. Lamb to Mark S. Levinstein, dated Dec. 3, 2008).)  Savage, however, insisted on the continuing confidentiality of the Mediations communications, stating under penalty of perjury that she "spoke candidly [at the Mediations] in the belief that confidentiality would be maintained regardless of whether the Adversary Proceeding was settled during mediation."  (Declaration of Denise L. Savage, dated May 10, 2009, at ¶ 9)(ECF Doc. # 237.)

## D.    Motion to Lift Confidentiality

Savage's position prompted the Motion.  K&L seeks an order:

1)  lifting the confidentiality requirements in the Mediation Orders[3];

2)  modifying the Mediation Orders to provide that no confidentiality requirement imposed by the Mediation Orders forecloses any participant in the Mediations from producing  documents, giving testimony or otherwise divulging information "relating to or made during the course of" the Mediations, receiving any information or documents relating to the Mediations; or using any such documents, testimony, or information in connection with the DC Action; and

---

[3]    The phrase "Mediation Orders," as used in the K&L Motion, refers both to the General Mediation Order and the Teligent Mediation Order.

3) modifying the Mediation Orders to provided that no confidentiality requirement imposed by the Mediation Orders forecloses Hon. Erwin I. Katz, the Mediator for both of the Mediations, from producing any documents, giving any testimony, or otherwise divulging any information relating to or made during the course of the Mediations in connection with the DC Actions, or receiving any information or documents relating to the Mediations.

(Motion, at 1-2.)

K&L offers several reasons why the Mediations communications and the mediator's testimony "may be relevant." First, they may shed light on the issues of causation, mitigation, and damages, and in particular, why Mandl settled at the price he did rather than pursue his post-trial motions or an appeal. (See id., at 13-14.) K&L speculates that Mandl may have settled without regard to his actual exposure, which GT had estimated to be $3.19 million, (id., at 14-15), or because Savage threatened Mandl with criminal and tax-related liability. (Id., at 15.) Moreover, Savage discontinued the fraudulent conveyance action against Susan Mandl and ASM without extracting a separate payment from either defendant. The release of his wife and affiliate may have affected Mandl's decision to settle at a higher number than his potential exposure. (Id., at 15-16.)

Second, the Mediations communications may be relevant to Mandl's damages. The parties valued the Settlement at $16 million (i.e., the Agreed Valuation), but the amount of consideration that Mandl committed to pay, aside from half of the net proceeds of the DC Action, was far less. (Id., at 16-17.) The mediator's report stated that he was "not aware of any reason why that amount is not a reasonable approximation of the value of the settlement," and Savage asserted at the time that she sought judicial approval of the Settlement that the Settlement would include a claim of $16 million against K&L. (Id., at

16-17.)  Lastly, Mandl responded to an interrogatory that the Agreed Valuation was based on the probabilities assigned by each party to the outcome of the post-trial motions, and K&L's failure to exercise due diligence in discovering important evidence that surfaced after the trial.  (Id., at 17.)

Third, K&L contends that the Proceeds Assignment is invalid, and suggests that the Mediations communications may be relevant in establishing that the assignment was improper.  (Id., at 18-19.)

## E.      Savage's Response and Cross-Motion

Savage opposed the Motion, arguing that there was no compelling need to lift the confidentiality restrictions.  In addition, she cross-moved to compel compliance with the Teligent Mediation Order, to sanction K&L and others involved in the DC Action and to enjoin K&L from litigating the validity of the Proceeds Assignment in the DC Action. She argues that K&L had standing to object to the Settlement, and its failure to do so collaterally estops it from attacking any portion of the Settlement in the DC Action. Furthermore, the Anti-Injunction Act (specifically the "relitigation" exception), the All Writs Act and the Supremacy Clause of the Constitution provide this Court with the power to take actions to "effectuate its judgment," including preventing K&L from litigating validity of the Proceeds Assignment in the DC Action.

## DISCUSSION

## A.      The Mediation Privilege

Mediation plays a critical role in the resolution of lawsuits by fostering settlement and preserving personal and judicial resources.  See Fields-D'Arpino v. Rest. Assocs.,

10

Inc., 39 F. Supp. 2d 412, 417 (S.D.N.Y. 1999) ("[M]ediation provides a vital alternative

to litigation," whose benefits "include its cost-effectiveness, speed and adaptability.");

see generally UNIF. MEDIATION ACT ("UMA"), 7A U.L.A. 93 (2006) (Prefatory Note).

Mediation requires confidentiality to promote the candor critical to its success.  Bradley

v. Fontaine Trailer Co. Inc., No. 3:06CV62 (WWE), 2007 WL 2028115, at *5 (D. Conn.

July 10, 2007) ("The parties must trust that their disclosures, both oral and written, during

mediation will remain confidential and that their candor will be protected."); Concerned

Citizens of Belle Haven v. Belle Haven Club, 3:99CV1467 (AHN), 2002 WL 32124959,

at *5 (D. Conn. Oct. 25, 2002) ("Mediation provides a vital alternative to litigation.  The

success of mediation depends, in part, on the ability of the parties to freely and openly

discuss the relevant issues.  Accordingly, confidentiality is a critical component of this

process."); Fields-D'Arpino, 39 F. Supp. 2d at 417 ("Successful mediation . . . depends

upon the perception and existence of mutual fairness throughout the mediation process.

In this regard, courts have implicitly recognized that maintaining expectations of

confidentiality is critical."); see generally UMA, 7A U.L.A. 94 (Prefatory Note) ("Candor

during mediation is encouraged by maintaining the parties' and mediators' expectations

regarding confidentiality of mediation communications.").  Addressing an analogous

program, the Second Circuit explained the importance of confidentiality to its Civil

Appeals Management Plan ("CAMP"):[4]

> It is essential to the proper functioning of the Civil Appeals Management
> Plan that all matters discussed at these conferences remain confidential.
> The guarantee of confidentiality permits and encourages counsel to
> discuss matters in an uninhibited fashion often leading to "settlement, the
> simplification of the issues and (the resolution of) any other matters which
> the staff counsel determines may aid in the handling or the disposition of

---

[4]    The CAMP program requires parties to an appeal to participate in a pre-argument conference
with staff counsel.  Among other things, the participants may discuss settlement.

> the proceeding." Civil Appeals Management Plan Rule (5)(a). If participants cannot rely on the confidential treatment of everything that transpires during these sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tight-lipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements and withdrawals of some appeals and to the simplification of issues in other appeals, thereby expediting cases at a time when the judicial resources of this Court are sorely taxed.

Lake Utopia Paper Ltd. v. Connelly Containers, Inc., 608 F.2d 928, 930 (2d Cir. 1979);

accord Calka v. Kucker Kraus & Bruh, 167 F.3d 144, 146 (2d Cir. 1999); Bernard v.

Galen Group, Inc., 901 F. Supp. 778, 784 (S.D.N.Y. 1995).

Consistent with this principal, mediation laws generally mandate confidentiality. For example, the Administrative Dispute Resolution Act of 1996, which applies to federal administrative agency ADR, declares the general rule that neither the neutral (e.g., mediator) nor the parties shall disclose ADR communications. 5 U.S.C. § 574(a)-(b). The Alternative Dispute Resolution Act of 1998, which authorizes federal courts to adopt ADR programs, provides that "each district court shall, by local rule . . . provide for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications," 28 U.S.C. § 652(d), and the violation of the confidentiality provisions of a federal mediation order subjects the disobedient party to sanctions. Bernard, 901 F. Supp. at 784 (fining counsel $2,500 for violating the District Court's mediation order). Finally, the UMA, which has been adopted in nine states and the District of Columbia, see D.C. CODE §§ 16-4201, et. seq., recognizes a mediation privilege. UMA § 4(a). Where the privilege applies:

> (1) A mediation party may refuse to disclose, and may prevent any other person from disclosing, a mediation communication.

> (2) A mediator may refuse to disclose a mediation communication, and may prevent any other person from disclosing a mediation communication of the mediator.

UMA § 4(b).

## B.    Exceptions to Confidentiality

The confidentiality of mediation communications is not absolute.  First, confidentiality does not apply in certain types of proceedings.  See UMA § 6(a).  Second, even when it does apply, a person may still gain access to mediation communications if it can satisfy a rigorous test.  For example, the UMA provides:

> (b) There is no privilege under Section 4 if a court, administrative agency, or arbitrator finds, after a hearing in camera, that the party seeking discovery or the proponent of the evidence has shown that the evidence is not otherwise available, that there is a need for the evidence that substantially outweighs the interest in protecting confidentiality, and that the mediation communication is sought or offered in:
>
> > (1) a court proceeding involving a felony [or misdemeanor]; or
> >
> > (2) except as otherwise provided in subsection (c), a proceeding to prove a claim to rescind or reform or a defense to avoid liability on a contract arising out of the mediation.

UMA § 6(b).

The Administrative Dispute Resolution Act of 1996 imposes a similarly high burden on the party seeking ADR communications.  The court must conclude that the disclosure is necessary to prevent a manifest injustice, help establish a violation of law or prevent harm to the public health and safety, and the need is "of sufficient magnitude in the particular case to outweigh the integrity of dispute resolution proceedings in general by reducing the confidence of parties in future cases that their communications will remain confidential."  5 U.S.C. § 574(b)(5); cf. In re Anonymous, 283 F.3d 627, 637 (4th Cir. 2002) ("We believe that the balance between these interests is best resolved by

disallowing disclosure unless the party seeking such disclosure can demonstrate that 'manifest injustice' will result from non-disclosure.").

**C.      The Disposition of the Motion**

The General Mediation Order and the Teligent Mediation Order expressly provide for confidentiality of mediation communications.  K&L does not contend that the confidentiality provisions do not cover a specific communication, or seek relief with respect to a specific communication that is covered.  Instead, K&L seeks blanket relief from the confidentiality provisions, without regard to any specific communication, primarily on the ground that the Mediations communications may be relevant to certain material issues in the DC Action.

Neither the Court's General Mediation Order nor the Teligent Mediation Order provides a framework for seeking relief, but the UMA and the Administrative Dispute Resolution Act of 1996 provide guidance.  The party seeking discovery of confidential mediation communications must show more than mere relevance to a pending action. Instead, it must demonstrate a special need and resulting unfairness, i.e., that the evidence is critical, not otherwise available, and the need for the evidence outweighs the interest in maintaining confidentiality.  The test is similar, in this regard, to what a litigant must show to obtain factual work product from his adversary.  See United States v. Adlman, 134 F.3d 1194, 1202-03 (2d Cir. 1998) (party seeking work product must show substantial need for the document and the inability to obtain its contents elsewhere without undue hardship); Plew v. Limited Brands, Inc., No. 08 Civ. 3741 (LTS)(MHD), 2009 WL 1119414, at *1 (S.D.N.Y. Apr. 23, 2009) ("The protection of the rule may be overcome, however, if the discovering party makes an adequate showing of substantial

need and the unavailability of alternative sources for the information absent undue hardship.").

K&L has plainly failed to meet its burden.  Although the Mediations communications may be relevant to some of the issues in the DC Action, K&L has not explained satisfactorily why they are critically needed.  Mandl has not charged K&L with committing malpractice in connection with the 2004 Mediation, and K&L did not participate in the 2008 Mediation.  Hence, K&L's conduct during the Mediations is not material to the malpractice claim.

Furthermore, although the Mediations communications may illuminate Mandl's reason for settling, and how the parties arrived at the Agreed Valuation of $16 million, K&L has failed to explain why this information is critical to the amount of damages that Mandl actually suffered.  Based upon Mandl's interrogatory answer in the DC Action, the Agreed Valuation appears to be the estimate that the parties placed on Mandl's exposure after factoring in the probable outcomes of the post-trial motions and any appeals.  Mandl did not, however, agree to pay $16 million.  Instead, he agreed to pay only $6.005 million plus 50% of the net proceeds recovered through the DC Action.  If he did not settle and ultimately prevailed in reversing the Judgment, he would have saved $6.005 million. While the Agreed Valuation may reflect a reasonable assessment of Mandl's liability if he refused to settle, and affected his decision to settle, it does not reflect the amount of damages that Mandl suffered as a result of K&L's alleged malpractice.

In any event, K&L can obtain the evidence it says the Mediations communications may clarify through other means if the communications are not

otherwise privileged.  For example, K&L can ask Mandl why he chose to settle rather

than pursue his post-trial motions, and how he arrived at the Agreed Valuation without

breaching the confidentiality provisions in the Mediation Orders.  He has already

responded to the second question in general terms when he answered K&L's

interrogatory, and K&L can follow up to get more specific information.  K&L can also

ask Savage how the parties decided on the Agreed Valuation.  Under analogous

circumstances, a party cannot show the substantial need necessary to obtain work product

if it can obtain equivalent information through depositions or other means of discovery.

Sicurelli v. Jeneric/Pentron Inc., No. 03-CV-4934 (SLT)(KAM), 2006 WL 1329709, at

*3 (E.D.N.Y. May 16, 2006); Garnier v. Illinois Tool Works, Inc., No. 04-CV-1825

(NGG)(KAM), 2006 WL 1211201, at *2 (E.D.N.Y. May 4, 2006).

Finally, K&L has failed to show that its need outweighs the important interest in

protecting the confidentiality of the Mediation communications.  (See K&L Memo, at 19-

20.)  This is a private dispute, and no public interest is at stake.  The DC Action did not

put the Mediations communications at issue, and the Mediations are not on trial.  In

addition, Savage relied on the promise of confidentiality to speak candidly.[5]  Mandl's

willingness to waive confidentiality is immaterial because Savage, the other party to the

Mediations, insists on it.  The confidentiality provisions in the General Mediation Order

and the Teligent Mediation Order belong to the parties and the mediator, and Mandl

cannot waive it on their behalf.

---

[5]        K&L argues that Savage had no basis to rely on the confidentiality provisions of the Teligent
Mediation Order because it expressly provided that the Court could order "otherwise."  The latter phrase
merely recognized the Court's inherent power to lift or limit confidentiality in appropriate circumstances, a
power that existed even if the Teligent Mediation Order did not provide for it.  If K&L were right, no one
could ever rely on the confidentiality of mediation communications.

Moreover, the need for confidentiality does not terminate automatically when the litigation has concluded. The codified mediation rules discussed above implicitly recognize this because they do not provide for the termination of confidentiality when the case is over. Assuming that the termination of the litigation is a factor to consider, it would not weigh in favor of relieving the parties from the confidentiality provisions in the Mediation Orders. The Settlement contemplated a subsequent lawsuit against K&L, and K&L maintains that the 2008 Mediation produced communications relevant to that lawsuit. Those communications were presumably made in candor under a promise of confidentiality. Where, as here, a mediated settlement contemplates future litigation, and the parties believe that the protection of confidentiality will terminate when the first case has ended, they will speak less candidly at the mediation.

Accordingly, the Motion is denied. This conclusion is not intended to foreclose K&L's right to argue before the DC court that a specific communication is not covered by the confidentiality provisions of the Mediation Orders (e.g., it was not made "during the mediation process"), or that the court should nevertheless order disclosure of a specific communication under applicable law.

**D.     Disposition of the Cross-Motion for Injunctive Relief**

K&L's Ninth Defense, asserted in the answer filed in the DC Action, states that Mandl's claims are barred by the unlawful Proceeds Assignment under the Settlement. (Unsecured Claims Estate Representative's Reply to KL Gates' and Alex Mandl's Objections to Cross-Motion, dated May 11, 2009 ("Savage Reply"), Ex. C, at 13)(ECF Doc # 236.) The nub of the Cross-Motion contends that K&L had the opportunity to challenge the Proceeds Assignment in connection with the 9019 Motion but failed to do

17

so.  The Court's approval of the Settlement validated the Proceeds Assignment, and

K&L's affirmative defense constitutes a collateral attack on the Settlement Order.

Savage seeks to stop the litigation of the defense under a variety of theories, including

collateral estoppel, the Supremacy Clause and the All Writs Act.

The Cross-Motion is based on two assumptions regarding the 9019 Motion:  K&L

had standing to raise and litigate the invalidity of the Proceeds Assignment, and the Court

decided, expressly or impliedly, that the Proceeds Assignment was a valid transfer.

Neither premise is correct.

### 1.    Standing

Standing is a threshold issue in every federal litigation.  "[T]he question of

standing is whether the litigant is entitled to have the court decide the merits of the

dispute <u>or of particular issues</u>.  This inquiry involves both constitutional limitations on

federal-court jurisdiction and prudential limitations on its exercise."  <u>Warth v. Seldin</u>, 422

U.S. 490, 498 (1975)(emphasis added).  Constitutional, or Article III standing, "imports

justiciability: whether the plaintiff has made out a 'case or controversy' between himself

and the defendant within the meaning of Art. III."  <u>Id.</u>  To establish Article III standing, a

party must show (1) an injury in fact that is actual or imminent rather than conjectural or

hypothetical, (2) the injury is "fairly traceable" to the conduct complained of, and (3) it is

likely, as opposed to speculative, that the injury will be redressed by a favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  Prudential standing refers to

the requirement that even "[w]hen the plaintiff has alleged injury sufficient to meet the

'case or controversy' requirement, . . .  the plaintiff generally must assert his own legal

rights and interests, and cannot rest his claim to relief on the legal rights or interests of

third parties." Warth, 422 U.S. at 499.

In addition, section 1109(b) of the Bankruptcy Code, which only applies in

chapter 11 cases, provides that "[a] party in interest, including the debtor, the trustee, a

creditors' committee, an equity security holders' committee, a creditor, an equity security

holder, or any indenture trustee, may raise and may appear and be heard on any issue in a

case under this chapter."  The Bankruptcy Code does not define "party in interest," Krys

v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.), 505 F.3d

109, 117 (2d Cir. 2007); Roslyn Savs. Bank v. Comcoach Corp. (In re Comcoach Corp.),

698 F.2d 571, 573 (2d Cir. 1983), and the phrase has been interpreted to mean "that

anyone who has a legally protected interest that could be affected by a bankruptcy

proceeding is entitled to assert that interest with respect to any issue to which it pertains. .

. ." In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992)(Posner, J.).  Thus, a

party must show that it has "a direct financial stake in the outcome of the case." Doral

Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.), 208 B.R. 812, 814

(S.D.N.Y. 1997).

Generally, a "party in interest" with respect to a particular issue will also meet the

requirement for Article III standing with respect to that issue. See 7 ALAN N. RESNICK &

HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1109.04[4][a], at 1109-40 (15th ed. rev.

2009).  Thus, the inquiries overlap.  A "party in interest" must still satisfy the prudential

limitations on standing, and cannot raise the rights of a third party even though it has a

financial stake in the case. E.g., In re Quigley Co., 391 B.R. 695, 705 (Bankr. S.D.N.Y.

2008).

.       K&L was not a party to this adversary proceeding or a "party in interest" in the

Teligent case.  It was not a creditor of Teligent; it was merely a potential debtor of

Teligent's debtor (i.e., Mandl).  As such, it had no financial stake in the outcome of the

bankruptcy case.  Furthermore, it had no stake in the outcome of the 9019 Motion; the

Settlement did not require K&L to pay any money to the Teligent estate or to Mandl.  In

fact, the Proceeds Assignment arguably benefited K&L by providing an additional

defense to the malpractice claim.  At most, the Settlement impacted K&L by requiring

Mandl to sue it for legal malpractice.  However, a person "whose only interest is as a

party defendant, has no pecuniary interest in a court order authorizing the suit against that

appellant and no standing to appeal that order."  Austin Assocs. v. Howison (In re

Murphy), 288 B.R. 1, 4-5 (D. Me. 2002); accord Integrated Solutions, Inc. v. Serv.

Support Specialties, Inc., 193 B.R. 722, 726 (D.N.J. 1996) (creditor had no standing to

challenge order approving sale and assignment of cause of action because "any financial

exposure [was] contingent upon [the plaintiff] prevailing in the litigation"), aff'd, 124

F.3d 487 (3d Cir. 1997).

Accordingly, K&L lacked standing to oppose the 9019 Motion and the Proceeds

Assignment.  If it lacked standing, Savage could not manufacture standing, or make K&L

a "party in interest," by serving K&L with the 9019 Motion.

**2.      Collateral Estoppel**

Even if K&L had standing to object to the Settlement and failed to do so, it would

not be collaterally estopped from challenging the validity of the Proceeds Assignment in

the DC Action.  Collateral estoppel bars a party from re-litigating an issue when: (1) the

identical issue was raised in a previous proceeding; (2) the issue was actually litigated

and decided in the previous proceeding; (3) the party had a full and fair opportunity to

litigate the issue; and (4) the resolution of the issue was necessary to support a valid and

final judgment on the merits.  Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89

(2d Cir. 2002) (quotations omitted).

The validity of the Proceeds Assignment was never raised, litigated or decided in

connection with the 9019 Motion, nor was it necessary to do so.  On a motion to approve

a settlement, a court does not decide underlying questions of law or fact.  Cosoff v.

Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir.), cert. denied, 464 U.S. 822

(1983).  In particular, the court is not required to determine the enforceability of a cause

of action assigned by settling party to trustee in order to approve a settlement.  Hicks,

Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 53 & n.9 (1st Cir.

1998).  Instead, the court must determine that the settlement does "not fall below the

lowest point in the range of reasonableness."  W.T. Grant Co., 699 F.2d at 608 (internal

quotation marks and citation omitted).  The decision is based on several factors including

the risks and rewards of continued litigation, the possibility of delay, increased costs and

difficulty in collection even if the trustee prevails, the interest of the creditors and

whether they support the settlement, the competency of counsel that support the

settlement and the extent to which the settlement reflects an arms-length bargain.  See In

re Iridium Operating LLC, 478 F.3d 452, 462 (2d Cir. 2007).

Here, the Court approved the Settlement after considering the relevant factors

without deciding the merits of the claims or issues between the parties.  The $12 million

Judgment might not withstand Mandl's motion for a new trial or survive on appeal, and

even if the Judgment stood, there was no guarantee that Savage could collect the full

amount.  At bottom, Mandl's agreement to write a $6 million check and assign 50% of whatever he might recover on his legal malpractice claim was a fair and reasonable resolution even if, as Savage acknowledged, the value of the Proceeds Assignment was questionable, and "could be de minimis or $0."  (Settlement at ¶ 5.2).

### 3.    Savage's Other Arguments

Savage's remaining contentions in support of injunctive relief merit brief comment.  She asserts that any state law that invalidates the Proceeds Assignment undermines the Settlement, conflicts with the Settlement Order, violates the Supremacy Clause and is, therefore, pre-empted.  (Savage Objection and Cross-Motion, at 31-32.).

In Altria Group, Inc. v. Good, 129 S. Ct. 538 (2008), the Supreme Court explained:

> Our inquiry into the scope of a statute's pre-emptive effect is guided by the rule that " '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." . . . Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. . . . If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. . . .

Id. at 543 (citations omitted).

Savage has not identified a state law or District of Columbia law that conflicts with any provision of the Bankruptcy Code, and her entire argument is speculative.[6]  In any event, invalidating the Proceeds Assignment will not invalidate the Settlement or the Settlement Order.  At most, it may affect the value of the consideration that passed to

---

[6]    In fact, New York law permits the assignment of the proceeds of a tort claim even where the claim itself is not assignable.  See Aponte v. Maritime Overseas Corp., 300 F. Supp. 1075, 1077 (S.D.N.Y. 1969); Sierra v. Garcia, 562 N.Y.S.2d 624, 625 (N.Y. App. Div. 1990).

Savage, although, as noted, she acknowledged in the 9019 Motion that the value of the Assignment Proceeds might be zero anyway.

Savage also failed to show an express or implied intent by Congress to pre-empt any and every state law that restricts the assignment of property by a non-debtor to a trustee, or that might otherwise diminish the value of property that an estate acquires post-petition under a settlement agreement.  Cf. Integrated Solutions, Inc. v. Serv. Support Specialties, Inc., 124 F.3d 487, 494 (3d Cir. 1997)(Bankruptcy Code did not pre-empt state law that invalidated assignment of tort claim transferred pursuant to 11 U.S.C. § 363).  Property rights in bankruptcy are generally determined under state law, Butner v. United States, 440 U.S. 48, 55 (1979), and Savage could not acquire more than Mandl could lawfully give.

Savage makes a related argument that the Court should enjoin K&L from collaterally attacking the Settlement Order and the validity of the Proceeds Assignment under the Anti-Injunction Act, 28 U.S.C. § 2283,[7] the All Writs Act, 28 U.S.C. § 1651(a),[8] and its bankruptcy analogue, 11 U.S.C. § 105(a).[9]  The Anti-Injunction Act and the All Writs Act are closely related, and should be construed together.  Olin Corp. v. Ins. Co. of N. Am., 807 F. Supp. 1143, 1152 (S.D.N.Y. 1992).  The Anti-Injunction Act

---

[7]        Section 2283 states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

[8]        Section 1651(a) authorizes the Supreme Court and all courts established by Act of Congress to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

[9]        Section 105(a) empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

cannot be evaded indirectly by seeking to enjoin the litigants rather than the state court.

Atlantic Coast Line R. R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970).  Any

doubts should be resolved in favor of not issuing an injunction against state court

proceedings.  Id. at 297.

Initially, Savage contends that 11 U.S.C. § 105(a) expressly authorizes the

injunction.  However, "an exercise of section 105 power [must] be tied to another

Bankruptcy Code section and not merely to a general bankruptcy concept or objective."

New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart

Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003)(internal quotation marks and

citation omitted); accord Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439 (1st Cir. 2000),

cert. denied, 532 U.S. 1048 (2001).  Savage has not cited any specific Bankruptcy Code

provision that § 105(a) is needed to implement.

Next, she argues that the injunction may be authorized under the so-called

"relitigation" exception, which applies when the state court is presented with an issue that

was previously presented to and decided by the federal court.  Chick Kam Choo v. Exxon

Corp., 486 U.S. 140, 147 (1988); accord Hanover Ins. Co. v. Olin Corp., No. 92 Civ.

4278, 1995 WL 598984, at *2 (S.D.N.Y. Oct. 11, 1995) ("[A] federal court is authorized

to enjoin only that which has been previously decided and no more.")  As explained

above, the Court never decided the validity of the Proceeds Assignment.

Finally, Savage maintains that an injunction is necessary to aid the Court's

jurisdiction and effectuate its orders.  For the reasons stated, the litigation involving the

validity of the Proceeds Assignment does not affect the validity of the Settlement Order, or anything that the Court decided.

### E.    Sanctions

The Cross-Motion also requests monetary sanctions against K&L, Williams & Connelly (K&L's counsel in the DC Action) and Hall Lamb Hall (Mandl's counsel in the DC Action).  In addition, she seeks the turnover of the Mediations communications that were improperly disclosed.  According to Savage, Hall Lamb delivered certain confidential Mediations communications to K&L and Williams & Connelly, (see Savage Objection and Cross-Motion, at 43), who reviewed them and failed to return them to Hall Lamb when Savage demanded that they do so.

I decline to award sanctions.  At worst, K&L and Williams & Connelly, non-parties to this adversary proceeding, are guilty of receiving confidential documents.  Once Savage complained, Williams & Connelly returned the CD containing the Mediations communications, and removed and destroyed any copies from its files.

On the other hand, Hall Lamb did violate the confidentiality provisions in the Mediation Orders.  After concluding that the Mediations communications were relevant to the DC Action, it turned over the Mediations communications to the other side.  Although mere relevancy does not override the protection of confidentiality, Hall Lamb did not act in bad faith, and I do not regard its conduct to be sanctionable.

Accordingly, the Cross-Motion is denied.  I have considered the other arguments

raised by the parties, and conclude that they lack merit.  Settle order on notice.


Dated: New York, New York
       September 24, 2009


                          /s/ *Stuart M. Bernstein*
                          STUART M. BERNSTEIN
                          Chief United States Bankruptcy Judge