```
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES BANKRUPTCY COURT
---------------------------------------------------------------X
In re:                                              :
                                                    :
TELIGENT, INC.,                                     :    Chapter 11
                                                    :    Case No. 01-12974 (SMB)
                Reorganized Debtor.                 :
---------------------------------------------------------------X
SAVAGE & ASSOCIATES, P.C., as the                   :
Unsecured Claims Estate Representative for          :
and on behalf of TELIGENT, INC., et al.,            :    Adv. Proc. No. 03-2523
                                                    :
                Plaintiff,                          :
                                                    :
        -- against --                               :
                                                    :
ALEX J. MANDL,                                      :
                                                    :
                Defendant.                          :
---------------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO CLARIFY PRIOR ORDER AND FOR INJUNCTIVE RELIEF

**A P P E A R A N C E S:**

SAVAGE & ASSOCIATES, P.C.
P.O. Box 804
Croton-on-Hudson, New York 10520

  Denise L. Savage, Esq.
    Of Counsel

*Attorneys for Plaintiff Savage & Associates, P.C.*

HALL, LAMB & HALL, P.A.
Offices at Grand Bay Plaza
2665 South Bayshore Drive
Penthouse One
Miami, Florida 33133

  Andrew C. Hall, Esq.
    Of Counsel

  – and –

LAW OFFICES OF STEVEN E. ROSENFELD, P.C.
777 Third Avenue
24th Floor
New York, New York 10017

    Steven E. Rosenfeld, Esq.
        Of Counsel

*Attorneys for Defendant Alex J. Mandl*

WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005

    Michael S. Sundermeyer, Esq.
    Mark S. Levinstein, Esq.
    Luba Shur, Esq.
        Of Counsel

*Attorneys for K&L Gates LLP*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        The plaintiff in this adversary proceeding, Savage & Associates, P.C. ("Savage"), has moved for declaratory and injunctive relief against non-party K&L Gates LLP ("K&L") relating to certain issues involved in the litigation (the "DC Action") pending between defendant Alex Mandl and K&L in the Superior Court of the District Columbia ("DC Court").[1] Many of the issues raised in the *Motion* have already been decided, and Savage's efforts to argue the effect of those decisions or to seek new relief in this Court are improper. Consequently, the *Motion* is denied.

## BACKGROUND

        The background to the current motion is set forth at length in three opinions: *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 417 B.R. 197 (Bankr. S.D.N.Y. 2009) ("*Teligent*

---

[1]     *See Savage & Associates, P.C.'s Motion to (I) Clarify and Enforce Court-Ordered Settlement Agreement and for Declaratory Judgment [etc.]*, dated May 27, 2011 ("*Motion*") (ECF Doc. # 257).

*I*"), *aff'd* No. 09 Civ. 09674, 2010 WL 2034509 (S.D.N.Y. May 13, 2010) ("*Teligent II*"), *aff'd* 640 F.3d 53 (2d Cir. 2011) ("*Teligent III*").  The Court assumes familiarity with those opinions, and recounts the facts germane to the *Motion*.

In 1996, Teligent hired Mandl as its chief executive officer, and extended a $15 million loan.  The loan was immediately due and payable if Mandl resigned his employment without "good reason" but was automatically forgiven if Teligent terminated his employment other than for "cause."  In or around April 2001, Mandl retained K&L to represent him in connection with the termination of his employment.  At the time, Mandl owed $12 million on account of the loan. K&L drafted a severance agreement for Mandl reflecting that Teligent had terminated his employment other than for "cause" thereby triggering the loan forgiveness.

Teligent filed a Chapter 11 petition one month later.  It subsequently confirmed a plan pursuant to which Savage was appointed to serve as the Unsecured Claims Estate Representative. Savage started approximately 1,000 adversary proceedings, including one against Mandl, to avoid and recover preferences and fraudulent transfers.  In each case, the Court entered a mediation order that complemented the Court's general mediation order (collectively, the "Protective Orders"), and in relevant part, provided that communications made during the mediation process would remain confidential.

Following unsuccessful mediation efforts in 2004, the Court conducted a one-day bench trial, and concluded that Mandl had resigned before Teligent terminated his employment.  He was, therefore, liable to repay the balance of the loan, and the Court entered a judgment against Mandl in the approximate sum of $12 million.  Following the entry of judgment, Mandl hired new counsel, Greenberg Traurig, LLP ("Greenberg Traurig"), and Greenberg Traurig filed a

3

motion, *inter alia*, for relief from the judgment based on newly discovered evidence. At around the same time, Savage commenced a new action in the Eastern District of Virginia against Mandl, his wife Susan and Mandl affiliate ASM Investments LLC ("ASM") alleging that Mandl had fraudulently transferred property through ASM to his wife to conceal his assets from creditors.

### A.     The Settlement between Savage and Mandl

At this point, the parties decided to give mediation a second try. Greenberg Traurig invited K&L to participate in the mediation to address Mandl's claim that K&L had committed malpractice, but K&L declined. Although formal mediation failed to achieve a settlement, the parties subsequently reached an agreement. In relevant part, Mandl agreed to pay Savage approximately $6 million. He also agreed to commence a malpractice action against K&L and pay Savage 50% of the net recovery (the "Proceeds Assignment"). Paragraph 5.3 of the settlement agreement stated that Savage would have no role in the prosecution of the malpractice action (other than as a witness) or any authority to direct Mandl or his attorneys to act or refrain from acting with respect to that action. Savage moved for approval of the settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Rule 9019 Motion"). K&L was served with the Rule 9019 Motion, but did not appear or participate in the matter. At the conclusion of the hearing, the Court signed an order approving the settlement.

On May 30, 2008, before the Court actually signed the order approving the settlement, Mandl commenced the DC Action against K&L. K&L filed an answer asserting an affirmative defense that "[t]he claims that Mandl asserts are barred as an unlawful assignment, which occurred in a settlement with the Representative [Savage] in the adversary proceedings." In other words, the assignment of the malpractice claim was illegal, and rendered the malpractice

4

claim unenforceable. In addition, K&L served a discovery demand that sought documents relating to "the negotiations leading up to the Settlement Agreement, including all mediation and settlement communications." Mandel did not object to the production of the mediation documents, but Savage did.

**B.    The Prior Motion Practice**

Savage and K&L then returned to this Court. K&L sought blanket relief from the confidentiality provisions of the Protective Orders. Savage cross-moved for injunctive relief to prohibit Mandl from litigating the validity of the Proceeds Assignment in the DC Action. This Court denied both motions. It concluded that K&L had failed to sustain its burden of showing that it was entitled to a blanket lifting of the confidentiality provisions, *Teligent I*, 417 B.R. at 208, but was not foreclosed from arguing *before the DC Court* that "a specific communication is not covered by the confidentiality provisions of the Mediation Orders (*e.g.,* it was not made 'during the mediation process'), or that the court should nevertheless order disclosure of a specific communication under applicable law." *Id.* at 209. In denying Savage's cross-motion, the Court concluded that K&L lacked standing to raise or litigate the invalidity of the Proceeds Assignment in connection with the Rule 9019 Motion, *id.* at 211, and further, that this Court did not decide the validity of the Proceeds Assignment when it approved the settlement. *Id.*

After the District Court affirmed, *see Teligent II*, 2010 WL 2034509, both parties appealed to the Court of Appeals. Affirming both lower courts, the Second Circuit explained the importance of confidentiality to mediation, *Teligent III*, 640 F.3d at 57–58, and ruled that "[a] party seeking disclosure of confidential mediation communications must demonstrate (1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Id.* at

5

58. K&L had failed to satisfy each of the three prongs, and there was no error in denying its motion to lift the confidentiality provisions of the Protective Orders. *Id.* at 59–60. As to Savage's appeal, the Court of Appeals agreed that K&L was not a "party in interest" under 11 U.S.C. § 1109 with respect to the Rule 9019 Motion, and was not, therefore, estopped from asserting in the DC Action that the Proceeds Assignment rendered the malpractice claim unenforceable. *Id.* at 60–61.

C.     **The Current Motion**

Shortly after the Second Circuit rendered its decision, K&L renewed its efforts to obtain materials protected by the mediation privilege, and eventually moved before the DC Court to compel Mandl, his wife Susan, and ASM to produce all documents withheld based on any asserted mediation privilege. K&L also asked the DC Court to declare that any asserted mediation privilege does not provide a basis for any witness to refuse to answer a question asked at a deposition.[2] K&L submitted a proposed order with its motion that was consistent with this blanket relief.

K&L's activities prompted the current motion. Savage requests a permanent injunction (1) preventing K&L from filing any motion in the DC Court that seeks any communications between Mandl, Savage, their respective counsel and the mediator relating to or in connection with the mediation of the settlement agreement for the period March 1, 2008 through June 6, 2008 (which Savage defines as the "Mediation Process"), (2) compelling K&L to file any motions that seek a "specific" mediation communication with this Court and (3) enjoining Mandl

---

[2]     A copy of K&L's Motion to Compel Production of Alleged Mediation and Settlement Discovery and Certain Deposition Testimony ("Motion to Compel") is attached as Exhibit H to *Savage and Associates, P.C.'s Supplement to Motion [etc.]*, dated June 4, 2011 ("*Savage Supplement*") (ECF Doc. # 258).

6

from producing any mediation communications without further order of this Court. (*Motion* at 14.) On June 3, 2011, Savage wrote to the DC Court recounting the background of the litigation relating to the Protective Orders, and asked the DC Court to postpone a hearing on K&L's Motion to Compel until this Court ruled on her motion.[3] In response, the DC Court held K&L's Motion to Compel in abeyance.

Savage also asks for additional relief relating to the Proceeds Assignment. Specifically, Savage requests (1) a declaration that the Proceeds Assignment is permissible under New York and federal bankruptcy law and (2) an injunction preventing K&L from seeking an order in the DC Action that might conflict with this Court's order and impair property of estate. (*Motion* at 25.)

## DISCUSSION

**A.    The Proceeds Assignment**

During the earlier proceedings, the Court ruled that (1) it had not determined the validity of the Proceeds Assignment when it approved the settlement, (2) K&L, which was not a party to the settlement, was not a party in interest regarding the Rule 9019 Motion, and (3) K&L was not precluded from asserting as a defense in the DC Action that the Proceeds Assignment barred the malpractice claim. Savage now asks the Court to declare the validity of the Proceeds Assignment. At the outset, the request for declaratory relief is procedurally improper. A party seeking a declaratory judgment must do so by commencing an adversary proceeding. FED. R. BANKR. P. 7001(9). Here, Savage seeks a declaratory judgment binding K&L in an adversary proceeding to which it is not even a party. Savage contended at oral argument that K&L had

---

[3]    A copy of the June 3, 2011 letter is attached as Exhibit I to the *Savage Supplement*.

7

intervened when it previously sought relief from the confidentiality provisions of the Protective Orders. The Court never authorized K&L to intervene in the adversary proceeding—in which a final judgment had been entered years earlier. Rather, it heard K&L's request for relief from the Protective Orders that acted as a limit on discovery in the DC Action where it was a party. It was Savage, not K&L, who raised the validity of the Proceeds Assignment. K&L no more intervened as a party in this adversary proceeding by challenging the Protective Orders than Savage intervened as a party in the DC Action by seeking to enforce them.

Even if the request was procedurally proper, Savage's jurisdictional argument is wrong.[4] It rests on the assumption that this Court has *exclusive* jurisdiction to determine the validity of the Proceeds Assignment and its effect on the malpractice claim because the outcome of that issue will have an effect on the estate. (*See Motion* at 25.) The estate's right to receive 50% of the net proceeds recovered by Mandl in the DC Action is undoubtedly property of the estate. *See* 11 U.S.C. § 541(a)(7) (Property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case.").[5] This interest confers "related to" subject matter jurisdiction in this Court over Mandl's malpractice action. *Balzotti v. RAD Invs.*, 273 B.R. 327, 331 (D.N.H. 2002) (plaintiffs' assignment to the trustee of the first $200,000 of any net proceeds obtained from a litigation "gives the bankruptcy estate a sufficient stake in the outcome of the proceeding to bring the plaintiffs' claims within the scope of the court's 'related to' jurisdiction"); *see Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.5 (1995) ("Proceedings

---

[4] The Declaratory Judgment Act is procedural and does not enlarge the Court's jurisdiction. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1278 n.19 (2009); *see* 28 U.S.C. § 2201(a) (authorizing a federal court to enter a declaratory judgment "[i]n a case of actual controversy within its jurisdiction").

[5] The "proceeds" are not property of the estate because there are no proceeds and there may never be. *Cf.* 11 U.S.C. § 541(a)(3) (property of the estate includes any interest in property that the trustee "recovers" under sections 329(b), 363(n), 543, 550, 553 or 723 of the Bankruptcy Code).

8

'related to' the bankruptcy include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate."). Savage is not, however, insisting that this Court hear the entire malpractice action. (*Reply of Savage & Associates, P.C. to K&L Gates and Alex Mandl's Opposition [etc.]*, dated July 25, 2011, at 8 ("Nothing in the Motion expressly states or implies that the Representative seeks to have this Court rule on the merits of the DC Action.").) Instead, she wants me to decide only one aspect—the validity of the Proceeds Assignment, and ultimately, the sufficiency of K&L's defense.

The *Motion* is largely the product of the mistaken assumption that the DC Action may result in the voiding of the Proceeds Assignment. The issue before the DC Court is whether the Proceeds Assignment is a defense to Mandl's malpractice claim against K&L. The DC Court cannot void or otherwise defeat Savage's rights under the Proceeds Assignment because she is not a party to the DC Action. Regardless of what the DC Court decides, the estate will retain its right to 50% of the proceeds in addition to any other rights granted under the settlement agreement. Clearly, a determination that the Proceeds Assignment rendered the malpractice claim unenforceable will affect the value of the consideration that the estate receives under the settlement agreement, but it will not affect the rights as between Mandl and Savage.

But even if it did, the estate's interest in the proceeds does not confer exclusive subject matter jurisdiction in this Court to decide one issue in a non-core malpractice claim between non-parties pending in a different court. Initially, K&L is not asking the DC Court to "interpret" or even enforce the settlement agreement but to determine the legal effect of the unambiguous Proceeds Assignment on the malpractice claim. The issue was never decided, and Savage's call for a "clarification" does not seek "clarification" of any ambiguity, but new and additional relief.

9

The legal effect of the Proceeds Assignment on the malpractice claim is an issue between Mandl and K&L which must be decided by the DC Court.

The assertion of exclusive jurisdiction is also inconsistent with the law and the settlement agreement. The District Court (and hence, the Bankruptcy Court) has exclusive jurisdiction over bankruptcy cases, 28 U.S.C. § 1334(a), and property of the debtor and property of the estate. 28 U.S.C. § 1334(e). However, it has "original but not exclusive jurisdiction" over bankruptcy proceedings. 28 U.S.C. § 1334(b). While the Court enjoys exclusive jurisdiction over property of the estate, it only enjoys nonexclusive jurisdiction over bankruptcy proceedings that may affect property of the estate. Furthermore, the Proceeds Assignment is part of a contract (the settlement agreement), and although it was blessed by an order of this Court, a state court may determine its meaning and effect. *In re Sunbrite Cleaners, Inc.*, 284 B.R. 336, 342 (N.D.N.Y. 2002) ("Because contract interpretation is an issue of state law . . . the state courts are perfectly well-suited to interpret the First Amended Plan."); *In re Landreth Lumber Co.*, 393 B.R. 200, 205 (Bankr. S.D. Ill. 2008) ("[T]he state court had concurrent jurisdiction to interpret a provision of the confirmed plan as a matter of contract law. . . ."); *Kmart Creditor Trust v. Conaway (In re Kmart Corp.)*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) ("Orders of bankruptcy courts, like those of other courts, can also be interpreted by other courts of competent jurisdiction. Thus, state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation.").

In addition, Paragraph 24 of the settlement agreement provided that "[t]he Bankruptcy Court retains jurisdiction with respect to any and all issues arising with respect to this Agreement

and enforcement thereof."[6] Nothing in the settlement agreement vested this Court with exclusive jurisdiction over any proceeding that might arise in connection with the settlement agreement.

Finally, the plan's grant to this Court of "exclusive jurisdiction over the Chapter 11 Cases" for several purposes, (*Motion* at 27), is consistent with 28 U.S.C. § 1334(a). However, District Courts (and hence, Bankruptcy Courts) possess nonexclusive jurisdiction over bankruptcy proceedings, 28 U.S.C. § 1334(b), and the plan cannot modify this jurisdictional grant, particularly when the provision is asserted against one who was not a party in interest in the bankruptcy case and was not, therefore, bound by the plan.

In the end, deferring to the DC Court gives Savage the benefit of the bargain she struck. She agreed with Mandl that he would commence a malpractice action against K&L, and he commenced that action in a non-bankruptcy court before this Court ever approved the settlement agreement. The parties further agreed that Mandl would assign an interest in the proceeds rather than the cause of action. They presumably structured the transaction as a proceeds assignment to avoid the prohibition under New York General Obligations Law § 13-101(1) against the assignment of personal injury claims.[7] They knew or should have known that notwithstanding their efforts, the Proceeds Assignment might become an issue in the malpractice action. Savage nevertheless agreed in paragraph 5.3 of the settlement agreement that she would not interfere with the prosecution of the malpractice action, leaving it to Mandl to press his claim and fight

---

[6]   A copy of the settlement agreement is attached as Exhibit B to the *Motion*.

[7]   N.Y. GEN. OBLIG. LAW § 13-101(1) provides:

  **Transfer of claims**. Any claim or demand can be transferred, except in one of the following cases:
     1. Where it is to recover damages for a personal injury . . . .

11

any affirmative defenses.[8]

Yet she, a non-party to the DC Action, is attempting to hijack the determination of an affirmative defense asserted by K&L in the DC Court. An extension of her theory would require this Court to take over and determine all issues that might affect Savage's ability to realize value from the Proceeds Assignment, and enjoin any efforts by K&L in the DC Action to defend itself against Mandl's claim. Mandl (and Savage) took all the risks associated with the prosecution of the malpractice claim and those disputes must be resolved in the DC Action. Accordingly, the Court declines Savage's invitation to address the effect of the Proceeds Assignment on Mandl's malpractice claim. To the extent not specifically addressed, Savage's remaining arguments lack merit.

**B.    The Confidentiality Issue**

K&L's request in the DC Action for the same discovery this Court expressly refused to permit raises a more difficult question. This Court denied K&L's request for blanket relief from the Protective Orders, without prejudice to its right to seek specific communications in the DC Court. Yet K&L is seeking, among other things, the same blanket relief in the DC Action. Its Motion to Compel requests an order directing Mandl, his wife and ASM to produce any documents that have been withheld based on a mediation privilege and precluding them at a

---

[8]   Savage's argument that K&L's assertion of the defense violates the automatic stay, (*Motion* at 43–45), is frivolous. A non-party does not violate the automatic stay by defending a lawsuit brought against it. *See Justus v. Fin. News Network Inc. (In re Fin. News Network, Inc.)*, 158 B.R. 570, 573 (S.D.N.Y. 1993) ("Since section 362 mandates a stay only of litigation 'against the debtor' designed to seize or exercise control over the property of the debtor, 11 U.S.C. § 362(a), it does not prevent entities against whom the debtor proceeds in an offensive posture— for example, by initiating a judicial or adversarial proceeding—from 'protecting their legal rights.'"). Under Savage's theory, the malpractice claim between non-debtors should be stayed because it might interfere with the estate's rights in the proceeds. *See 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987) ("If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay."), *cert. denied*, 485 U.S. 1035 (1988). Of course, she is not making this argument. But if the malpractice claim is not stayed, defending against the claim is not stayed.

12

deposition from asserting a mediation privilege as a basis for refusing to answer a question. Essentially K&L is asking the DC Court to rule that the mediation privilege does not bar the production of any documents or communications. Furthermore, K&L took the position at oral argument in this Court that Savage lacked standing to defend her privilege before the DC Court. (Transcript of the hearing held July 28, 2011, at 8–15) (ECF Doc. # 268).)

Notwithstanding these concerns, the Court must deny Savage's requests to (1) enjoin K&L from filing any motions for mediation communications in the DC Court, (2) require K&L to file all motions for "specific" mediation communications in this Court and (3) enjoin Mandl from producing any mediation communications without further order of this Court. The *Teligent* decisions addressed the first two demands. Those decisions denied blanket relief from the Protective Orders but recognized K&L's right to argue before the DC Court that "a specific communication is not covered by the confidentiality provisions of the Mediation Orders (*e.g.*, it was not made 'during the mediation process'), or that the court should nevertheless order disclosure of a specific communication under applicable law." *Teligent I*, 417 B.R. at 209.[9] Savage's request for injunctive relief ignores these rulings. Furthermore, there is no basis to enjoin Mandl from producing mediation communications if ordered to do so by the DC Court. And even without such an order, Mandl may produce mediation communications that do not infringe Savage's privilege. *Teligent II,* 2010 WL 2034509, at *7 n.1.

Moreover, although K&L seeks the same blanket relief from the Protective Orders in the DC Court that was denied by the courts of this Circuit, its Motion to Compel does not warrant an

---

[9] Savage mistakenly asserts that this Court has already decided that the mediation process terminated when the mediator filed his report on June 6, 2008. (*Motion* at 14.) The Court never made any such ruling, and it was unnecessary to do so. K&L sought blanket relief without regard to when the mediation process began and ended.

13

injunction. At bottom, the *Motion* contends that these rulings preclude K&L from seeking this relief in the DC Court. As a rule, "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'" *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (quoting 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4405, at 82 (2d ed. 2002)); *accord Covanta Onondaga Ltd. P'ship v. Onondaga County Res. Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003). In addition, any arguments that this Court has *exclusive* jurisdiction to determine whether a specific communication is discoverable are foreclosed by the prior decisions as well as for the reasons discussed in connection with the Proceeds Assignment.

Furthermore, the DC Court is in a far better position to supervise discovery relating to any mediation communications. Among other things, the DC Court may be called upon to determine whether specific communications are relevant, whether their production is necessary, whether it is unfair to deny discovery, and whether compelling production of a mediation communication outweighs the interest in maintaining its confidentiality.[10] The DC Court is the one most familiar with the litigation and the competing interests that must be considered in deciding whether disclosure should be required.

The prior ruling did assume that Savage would have the right to defend her personal mediation privilege in the DC Court, despite her non-party status. This assumption was based on the principle that a non-party has standing to challenge the discovery of materials in which that non-party asserts a privilege. *Estate of Ungar v. Palestinian Auth.*, 332 Fed. Appx. 643, 645 (2d Cir. 2009); *Solow v. Conseco, Inc.*, No. 06 Civ. 5988 (BSJ) (THK), 2008 WL 190340, at *4

---

[10] The parties have discussed other threshold issues such as whether Savage waived a mediation privilege by entering into a settlement that required Mandl to commence the DC Action. The Court offers no view, and concludes that it is more appropriate for Savage to defend against that argument in the DC Court.

14

(S.D.N.Y. Jan. 18, 2008) (Katz, M.J.); FED. R. CIV. P. 45 advisory committee's note (1991) (the court may "quash, modify, or condition a subpoena to protect the person subject to *or affected by the subpoena* from unnecessary or unduly harmful disclosures of confidential information") (emphasis added)[11]; *cf. In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1211 n.4 (2004) (non-party has appellate standing to protect privacy interest in records sought from other parties during pre-trial discovery).  Notwithstanding K&L's objections to Savage's participation, the DC Court heard Savage, and adjourned K&L's Motion to Compel at her request to allow this Court to consider her motion.  There is no reason to believe that she will not be able to continue to protect her privilege to the extent the law allows.  In the event that the DC Court rules against her, or limits her participation for reasons she thinks are improper, she can pursue her appellate rights in the DC court system.

Accordingly, the Court denies Savage's motion for injunctive relief, and concludes that her remaining arguments lack merit.

So ordered.

Dated: New York, New York
       October 3, 2011

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Court

---

[11]  Rule 45 of the D.C. Superior Court Rules of Procedure tracks the language of Federal Civil Rule 45, and expressly provides that "the Court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena." D.C. SUP. CT. R. 45(c)(3)(iii).